UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

KELLY DANSBY,

                     Plaintiff,

          -v-

THE CITY OF NEW YORK, MARLENE D.
GALARZA, MYLES DRISCOLL, and JOHN and
JANE DOE,

                   Defendants.

------------------------------------------------------------ X

:
:
:
:
:
:
:
:
:
:
:
:

16-cv-327 (KBF)

OPINION & ORDER

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: August 3, 2016 |

KATHERINE B. FORREST, District Judge:

      Plaintiff Kelly Dansby initiated this action in January 14, 2016 against his

employer, the Department of Information Technology & Telecommunications

("DoITT"), an agency of defendant the City of New York ("City"). Plaintiff also

brings claims against DoITT's Leaves/Supplementary Benefits Supervisor, Marlene

D. Galarza ("Galarza"), and Galarza's supervisor, Myles Driscoll ("Driscoll").

Plaintiff asserts his claims via 42 U.S.C. § 1983, alleging unlawful retaliation in

violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and

violation of his due process rights under the U.S. Constitution. Plaintiff also asserts

state law claims of disability discrimination in violation of New York State Human

Rights Law, N.Y. Exec. Law § 296 et seq. (the "State HRL") and New York City

Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. (the "City HRL").

      Plaintiff had been an employee of DoITT since 2003. From June 2008

through March 31, 2009, he took disability leave due to his anxiety disorder.

Plaintiff alleges that he then attempted to return to work, but DoITT refused to

reinstate him until May 2014 in retaliation for using disability leave, thus violating the FMLA and the Due Process Clause of the Fourteenth Amendment.  Plaintiff additionally alleges that at all relevant times, defendants discriminated against him on the basis of his disability and failed to accommodate his disability as required by the State HRL and City HRL.

Before the Court is defendants' motion to dismiss on the grounds that plaintiff's federal claims are time-barred or insufficiently pled as a matter of law. In opposing the motion to dismiss, plaintiff further requests from the Court leave to amend his Complaint.  For the reasons set forth below, defendants' motion to dismiss is GRANTED as to the federal claims.  The Court also GRANTS plaintiff's request for leave to amend his Complaint.  The motion to dismiss the State HRL and City HRL claims is DENIED as moot.

I.     FACTUAL BACKGROUND[1]

    A.     Parties

This action arose in connection with plaintiff's taking of a medical leave of absence from his job at DoITT from June 2008 to March 31, 2009 and DoITT's subsequent failure to reinstate plaintiff until May 2014.  (Compl. ¶¶ 21, 24-25, 57, 91, 103.)  DoITT first hired plaintiff in 2003.  (Compl. ¶¶ 6, 16.)  In mid-2003, plaintiff obtained his permanent Civil Service title, which meant he could not be removed from his job except for incompetency or misconduct.  (Compl. ¶¶ 17-18.)  At

---

[1]     In connection with this motion to dismiss, the Court accepts as true all material allegations of the complaint and construes all facts pled in favor of plaintiff.  W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008).

this time, his title was Call Center Representative, and he was later promoted to the title of provisional Associate Call Center Representative. (Compl. ¶¶ 17, 19.)

Plaintiff brings this action against DoITT and the City of New York, of which DoITT is an agency. (Compl. ¶¶ 6, 8.) Plaintiff is also suing two DoITT employees: Galarza, the Leaves/Supplementary Benefits Supervisor who processed and responded to plaintiff's requests for disability leave and reinstatement, (Compl. ¶¶ 10, 25-40), and Driscoll, who was Galarza's supervisor. (Compl. ¶ 12.)

B.    Plaintiff's Disability Leave

In July 2008, plaintiff requested a medical leave of absence from his work at DoITT pursuant to the FMLA. He submitted a doctor's note dated July 15, 2008 indicating a diagnosis of "panic/anxiety attacks." (Compl. ¶ 24.) On July 18, 2008, Galarza approved plaintiff's FMLA leave for July 10, 2008 to August 15, 2008. (Compl. ¶ 25.) Galarza further informed plaintiff that he must submit a doctor's note verifying his ability to return to work two weeks prior to his return or be put on absent without leave ("AWOL") status. (Compl. ¶¶ 26, 27.) On August 5, 2008, Galarza reminded plaintiff that he was set to return to work on August 18, 2008 (the Monday after the approved leave expired on August 15, 2008) and that DoITT needed a doctor's note verifying his ability to return to work. (Compl. ¶ 28.)

Plaintiff requested an extension of his disability leave. He submitted a note dated August 15, 2008 from his psychiatrist, Dr. Danielle Dewals-Acaru, recommending that plaintiff return to work on September 26, 2008. (Compl. ¶ 30.) Dr. Dewals-Acaru also explained that plaintiff was "under the psychiatric care

of . . . doctors Alison Hearn (psychologist) and Dr. [Hamid] Moussairian (psychiatrist)."[2]  (Compl. ¶ 30.)

On August 20, 2008, Galarza denied plaintiff's extension request and notified plaintiff that he was AWOL effective August 18, 2008.  (Compl. ¶ 31.)  Galarza explained that plaintiff's extension request was denied because he failed to submit notes from all three of his doctors.  (Compl. ¶ 32.)  On September 9, 2008, Galarza again notified plaintiff that he was considered AWOL as of August 18, 2008.  (Compl. ¶ 33.)

Shortly after September 9, 2008, plaintiff provided the requested documentation from his doctors to DoITT.[3]  (Compl. ¶ 34.)  On September 26, 2008, plaintiff submitted an additional note from Dr.  Moussavian,[4] stating that plaintiff was still suffering from "severe anxiety" and would not be able to return to work until November 4, 2008.  (Compl. ¶ 36.)  On October 22, 2008, Galarza informed plaintiff that his FMLA leave was granted through October 6, 2008[5] and his request for leave through November 4, 2008 was under further review.  (Compl. ¶ 37.)  Galarza later informed plaintiff, via telephone, that his additional leave until

---

[2]     The Complaint does not state when plaintiff submitted the doctor's note, only when the doctor's note was dated.  (Compl. ¶ 30.)  Accordingly, it is not clear to the Court when precisely plaintiff submitted this note.

[3]     Plaintiff does not provide a date on which he provided the paperwork; only that it occurred "shortly" after the September 9, 2008 letter from Galarza.  (Compl. ¶ 34.)

[4]     The Complaint refers to a Dr.  Moussairian as being one of plaintiff's psychiatrists, per Dr. Dewals-Acaru's note dated August 15, 2008, but then refers to notes submitted from a Dr. Moussavian.  (Compl. ¶¶ 30, 36.)  The Court assumes that these two names refer to the same doctor.

[5]     After this date plaintiff's FMLA leave was exhausted.  (Compl. ¶ 41.)

November 4, 2008 was granted under plaintiff's Collective Bargaining Agreement ("CBA").[6]  (Compl. ¶ 38.)

On November 21, 2008, plaintiff requested additional personal leave under the CBA to treat his disability and attend to an out-of-state family emergency. (Compl. ¶ 39.)  Plaintiff alleges that after this point—and until March 2014—he received no written communications or notice of any proceedings related to the status of his employment with DoITT.  (Compl. ¶¶ 40, 44-45, 47, 53-54.)  Among the communications plaintiff alleges he did not receive was a response from Galarza dated November 28, 2008, informing plaintiff that his FMLA leave expired on October 6, 2008 and that plaintiff was considered AWOL as soon as his CBA leave expired on November 4, 2008.  (Compl. ¶ 40.)

Because plaintiff was on AWOL status, DoITT initiated disciplinary charges against him on January 26, 2009.  (Compl. ¶ 42.)  This involved a two-step disciplinary hearing process, the first of which—called the "Step One" conference—took place on February 10, 2009.  (Compl. ¶ 43.)  At that Conference, plaintiff was found, in absentia, to have committed misconduct by being AWOL.[7]  (Compl. ¶ 47.)  The "Step Two" hearing took place on February 19, 2009, and plaintiff was demoted, in absentia, from Associate Call Center Representative to Call Center Representative.  (Compl. ¶¶ 52, 54.)  On February 25, 2009, DoITT sent plaintiff a

---

[6]     Plaintiff does not provide a date on which this conversation occurred, what the CBA says about additional leave, or who the CBA covers.

[7]     Plaintiff notes in his Complaint that there is no evidence that the Step One Conference ever actually occurred.  (Compl. ¶ 47.)

letter notifying him of this demotion.  (Id.)  Again, plaintiff alleges that he never

received notice of the disciplinary action against him or the resulting demotion.

(Compl. ¶¶ 44, 48, 51, 53.)

     C.    Plaintiff's Attempt to Return to Work

On March 31, 2009, plaintiff appeared at DoITT, stating that he was fit and

ready to return to work.  (Compl. ¶ 57.)  Galarza and Driscoll informed him that in

order to return to work, he would have to submit a doctor's note stating that he was

fit to return.  (Id.)  Accordingly, plaintiff submitted a note dated April 7, 2009 from

Dr. Moussavian stating that plaintiff was able to return to work on April 21, 2009.[8]

(Compl. ¶ 60.)  Plaintiff did not hear from DoITT until June 4, 2009, when Driscoll

called to inform him that the doctor's note was insufficient because it did not state

that plaintiff could work without restrictions.  (Compl. ¶ 63.)  Plaintiff submitted

another note from Dr. Moussavian dated June 23, 2009, stating that plaintiff was

able to return to work without any restrictions.  (Compl. ¶¶ 64, 65.)

Driscoll then sent a letter to Dr. Moussavian directly, stating that the

doctor's June 23rd note contained insufficient detail to allow plaintiff to return to

work.  (Compl. ¶ 70.)  Plaintiff alleges that he was not copied on the letter and had

no knowledge that Driscoll requested further information from Dr. Moussavian.

(Compl. ¶ 71.)  Plaintiff alleges that he later understood that Driscoll believed the

---

[8]    The Complaint does not state when plaintiff submitted the doctor's note, only when the doctor's note was dated.  (Compl. ¶ 60.)  Accordingly, it is not clear to the Court when precisely plaintiff submitted this note.

lack of a response from Dr. Moussavian meant plaintiff could not be cleared to return to work.  (Compl. ¶ 72.)

Throughout July 2009, plaintiff called and visited Driscoll to request a start date on which he may return to work.  Driscoll told plaintiff that he was "still looking into the matter," but did not inform plaintiff of the pending request for information from Dr. Moussavian.  (Compl. ¶¶ 77-78.)  Plaintiff continued to call DoITT and/or the City seven times between July 2009 and April 2011.[9]  (Compl. ¶ 80.)  Plaintiff's calls were either ignored, or he was informed that a determination regarding his return to work had not yet been made.  (Id.)

In October 2012, a DoITT employee called plaintiff to tell him that his picture was posted at the front desk security table.  (Compl. ¶ 86.)  Plaintiff took this to mean that he was banned from the DoITT office and, therefore began looking for new employment.  (Compl. ¶¶ 86-87.)

D.    Plaintiff's Return to Work

In March 2014, plaintiff received a job offer from the Department of Education ("DOE"), a different agency of the City. (Compl. ¶ 88.)  During a background check, the DOE found that plaintiff was still employed by DoITT and was listed as AWOL by that agency, which prevented his employment with DOE. (Compl. ¶ 89.)  After learning that he was listed as AWOL, plaintiff contacted Driscoll to clear his status at DoITT so that he could take the DOE job.  (Compl. ¶

---

[9]    Plaintiff called DoITT and/or the City on the following dates: July 1, 2009; July 2, 2009; April 15, 2010; April 16, 2010; April 20, 2010; May 31, 2010; August 12, 2010; and April 19, 2011.  (Compl. ¶ 80.)

90.)  Driscoll, in response, asked plaintiff to resign.  (Compl. ¶ 91.)  Plaintiff refused.
(Id.)  Driscoll then asked plaintiff if he wanted to return to work at DoITT.  (Id.)
Plaintiff accepted Driscoll's offer to return, but only because the DOE offer had
already expired by this point.  (Compl. ¶ 92.)

Plaintiff alleges that, upon information and belief, his personnel file
contained documentation that he was AWOL and that he was mentally unfit for
work.  (Compl. ¶ 199.)  He also alleges that "a few potential employers" had called
for a reference and DoITT told them that plaintiff was on involuntary leave "due to
his perceived impairment and inability to work."  (Compl. ¶ 195.)

After plaintiff returned to work, DoITT initiated disciplinary charges against
him for being AWOL from April 2009 to April 2014 as a condition of plaintiff's
return to DoITT.  (Compl. ¶ 94.)  After proceedings before the Office of
Administrative Trials and Hearings ("OATH"),[10] the Administrative Law Judge
Alessandra F. Zorgniotti ("ALJ Zorgniotti") found the AWOL charges to be
meritless.  (Compl. ¶ 95.)  The DoITT Commissioner Anne Roset adopted ALJ
Zorgniotti's findings with reservations.[11]  (Compl. ¶ 101.)

Plaintiff alleges that, since returning to work in May 2014, his supervisors
have singled him out for socializing with co-workers during the mid-day break, have
forbidden him from speaking to anyone but his supervisors, and treated plaintiff as

---

[10]     Plaintiff does not state in his Complaint when the OATH proceedings occurred, except to
note that ALJ Zorgniotti released her decision in 2015. (Compl. ¶ 95.)

[11]     Plaintiff does not state in the Complaint what reservations Commissioner Roset had about
ALJ Zorgniotti's findings.

a new employee despite his approximately seven years of seniority.  (Compl. ¶¶ 103-04, 109, 110.)  Plaintiff claims that as a result, he returned to psychiatric treatment.  (Compl. ¶ 115.)

In May 2015, plaintiff discovered that he had a bulging disk in his lower back.  (Compl. ¶ 116.)  He then took FMLA leave from May 2015 through September 2015.  (Compl. ¶ 117.)  Upon plaintiff's return to work on September 3, 2015, DoITT notified plaintiff that his work schedule had been changed from Tuesday through Saturday 9:00AM to 5:00PM to Monday through Friday 9:30AM to 5:30PM.  (Compl. ¶ 118.)  On September 17, 2015, plaintiff requested an accommodation to allow him to get to his physical therapy appointments by changing his work schedule to 8:30AM to 4:30PM.  (Compl. ¶¶ 119-20.)  Defendants have refused to grant this request or engage in any process to determine a reasonable accommodation for plaintiff.  (Compl. ¶¶ 121-22.)  As a result of these actions, in October 2015, plaintiff brought a charge with the Equal Employment Opportunity Commission ("EEOC") against defendants for failure to accommodate his disability and for disability discrimination. (Compl. ¶ 124.)

E.    The Instant Action

Plaintiff brought this suit on January 14, 2016.  Plaintiff asserts multiple claims via 42 U.S.C. § 1983 including claims for FMLA retaliation, due process violation of a property interest ("property interest claim"), due process violation of a liberty interest ("liberty interest claim"), and violations of both the State HRL and the City HRL. (Id.)

In support of his FMLA retaliation claim, plaintiff alleges that he engaged in protected activity by taking FMLA leave in 2008, and that that defendants' failure to reinstatement him was in retaliation for his use of the FMLA leave.  (Compl. ¶¶ 140-41.)

Plaintiff further asserts that defendants have deprived him of his constitutionally-protected property interest in his permanent civil service position without due process by taking five years to fully resolve his employment status at DoITT, by placing him on involuntary leave, and by not following the requirements provided by the New York Civil Service Laws.  (Compl. ¶¶ 177-80.)

Plaintiff also claims that defendants infringed upon his constitutionally-protected liberty interest by making negative notations in his DoITT personnel file, namely, that he was placed on involuntary leave and that he was mentally unfit for work from April 2009 to April 2014.  (Compl. ¶¶ 192, 199.)

Finally, plaintiff alleges that defendants' failure to reinstate him was a result of his disability and in violation of both the State HRL and the City HRL.  (Compl. ¶¶ 150, 161.)  Plaintiff further claims that defendants have failed to reasonably accommodate his known disability or engage in a good-faith process to find a reasonable accommodation, as required by both the State HRL and the City HRL. (Compl. ¶¶ 167-68, 172-73.)

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493

F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010) (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  <u>Id.</u>  The Court will give "no effect to legal conclusions couched as factual allegations."  <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555).  A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant."  <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).  But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  <u>Twombly</u>, 550 U.S. at 570; <u>Starr</u>, 592 F.3d at 321 (quoting <u>Iqbal</u>, 556 U.S. at 679).

A court may properly consider documents and contracts attached to or incorporated by reference in a complaint on a Rule 12(b)(6) motion to dismiss.

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Chambers v.
Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  In resolving a challenge to
standing under Rule 12(b)(1), courts may look outside the pleadings to "resolve
factual disputes concerning the existence of jurisdiction."  United States v. Vazquez,
145 F.3d 74, 80 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011
(2d Cir. 1986).

III.    DISCUSSION

   A.    FMLA Retaliation

   Defendants move for dismissal of plaintiff's FMLA retaliation claim as time-
barred.  The statute of limitations for FMLA claims is two or three years, depending
on if the alleged violation was willful.  29 U.S.C. § 2617(c)(1)-(2).  The action accrues
on "the date of the last event constituting the alleged violation for which the action
is brought."  29 U.S.C. § 2617(c)(1).  Violations are considered willful "if an employer
either knew or recklessly disregarded whether its conduct violated the FMLA."
Smith v. Westchester Cty., 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011) (citing Porter
v. N.Y. Univ. Sch. Of Law, 392 F.3d 530, 531-32 (2d Cir. 2004)).  Even if an
employer unreasonably determined that its actions were legal, such actions are not
deemed a willful violation of the FMLA, so long as the employer was not acting
recklessly.  Id.

   Defendants and plaintiff disagree as to what event counts as the last event
constituting an alleged violation.  Defendants argue that, even under the three-year
limitation for willful violations, plaintiff's claim is time-barred because the last
event constituting an alleged violation under the FMLA occurred in June 2009

when plaintiff submitted the last documentation that defendants requested, but defendants still did not reinstate him.  This means that the latest date for plaintiff to bring suit was June 2012.  In the alternative, defendants claim that the last event occurred in October 2012, which is when plaintiff claims he learned his picture was posted at the security desk at DoITT.  (Compl. ¶¶ 86-87.)  Therefore, defendants claim, plaintiff must have brought his claim by October 2015.  Plaintiff did not file his claim until January 14, 2016.

Plaintiff contends that his claim is not time-barred based on the continuing violation doctrine and that the last event constituting an alleged violation was in April 2014, when he was finally reinstated at DoITT.  The "continuing violation" doctrine is traditionally an exception to Title VII statute of limitations requirements;  in that context, if a plaintiff "files a charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, [then] all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).  Here, plaintiff argues that the doctrine applies to his claim, and that under the doctrine, the last event constituting an alleged violation was the day before plaintiff's reinstatement on May 5, 2014.  Thus, he argues, his claim dated January 14, 2016 was timely under either the two or three year statute of limitations.

This Court declines to extend the applicability of the continuing violations doctrine to the FMLA context.  See Ben-Levy v. Bloomberg L.P., No. 11 Civ. 1554

13

(KBF), 2012 WL 2477685 at *5 n.1 (S.D.N.Y. June 26, 2012); see also Clark v. Philadelphia Hous. Auth., 14 Civ. 5460, 2015 WL 1822528 at *2 (E.D. Pa. Apr. 21, 2015); Ammons-Lewis v. Metro Water Reclamation Dist. of Greater Chicago, 11 Civ. 6920, 2012 WL 1802148 at *6 (N.D. Ill. May 17, 2012); Smith, 769 F. Supp. 2d at 463 n.14.  While the Second Circuit has not yet addressed this precise issue, this Court is convinced that if Congress had intended for a continuing violations exception to apply to the FMLA statute of limitations, "it would likely have defined the operation of such an extended recovery period with greater detail . . . . Or it could have endorsed or ratified the preexisting judge-made 'continuing violations' doctrine in Title VII law."  See Barrett v. Illinois Dep't. of Corr., 958 F. Supp. 2d 984 (C.D. Ill. 2013), aff'd, 803 F.3d 893 (7th Cir. 2015).

Furthermore, even if the continuing violations doctrine applied to FMLA cases generally, it would be inapplicable in this case.  The continuing violations doctrine does not apply when there is a discrete prohibited act that serves as the basis of the claim.  See Ben-Levy, 2012 WL 2477685 at *5.  Based on the facts alleged in the Complaint, plaintiff's FMLA retaliation claim centers on defendants' failure to reinstate him when he attempted to return to work in June 2009 after he submitted the last doctor's note defendants requested.  (Compl. ¶¶ 64-65, 77-78, 80.) Regardless of whether defendants specifically told plaintiff at that time if he could return to work, their actions clearly indicated that they were not reinstating plaintiff, which is an easily identifiable discrete act.  See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1292 (11th Cir. 2002) ("[T]he failure to reinstate is a discrete

14

retaliatory act akin to a refusal to hire or promote."); Hadid v. City of New York, 15

Civ. 19 (WFK) (RER), 2015 WL 7734098, at *8 (E.D.N.Y. Nov. 30, 2015) (holding

failure to reinstate to be a discrete act).

Therefore, based on the facts alleged in the Complaint and construing them

in favor of plaintiff, the last event that could have possibly constituted an alleged

violation under the FMLA occurred in October 2012, when plaintiff understood that

he was barred from working at DoITT after discovering his picture was posted at

the security desk.  Because plaintiff brought his claim on January 14, 2016, which

is over three years later, his claim is untimely under the FMLA statute of

limitations.[12]

### B.   Property Interest Claim

Defendants move to dismiss plaintiff's property interest claim as time-barred.

Section 1983 claims borrow their statute of limitations from analogous state law

provisions.  Pepin v. New York City Dep't. of Educ., No. 14 Civ. 9657 (ER), 2016 WL

915298, at *3 (S.D.N.Y. Mar. 4, 2016) (citing Board of Regents of University of State

of N.Y. v. Tomanio, 446 U.S. 478, 485 (1980)).  A three year statute of limitation

applies here under New York law.  Id. (citing Owens v. Okure, 488 U.S. 235, 251

(1989)).

The parties contest when the action accrued.  Defendants assert that the

property interest claim accrued in June or July 2009, when plaintiff understood he

---

[12]    In the alternative to their statute of limitations grounds, defendants move for dismissal of
the FMLA retaliation claim on the basis that plaintiff has not adequately pled a causal connection
between his 2008 FMLA leave and the failure to reinstate in 2013-2014.  Because the Court has
dismissed the claim on statute of limitations grounds, it does not reach the merits of this alternative
basis for dismissal.

had been injured because he requested a start date and was never provided one.  In that case, plaintiff must have filed his claim by July 2012.  In the alternative, defendants assert that the claim accrued at the very latest as of October 2012, when plaintiff believed defendants had terminated him and banned him from the DoITT building.  In that case, plaintiff must have filed his claim by October 2015.  Plaintiff did not bring his case until January 14, 2016.

Plaintiff asserts that he was not aware of injury relating to this particular claim until the OATH decision in 2015, when he learned that defendants had previously placed him on involuntary leave.  He asserts that prior to that point, he knew he was suffering from adverse actions, but did not know why these actions were occurring or the fact that defendants had placed him on involuntary leave.

A plaintiff's Section 1983 claim accrues when he "knows or has reason to know of the injury which is the basis of his action.'"  <u>Pepin</u>, 2016 WL 915298, at *4 (quoting <u>Covington v. City of New York</u>, 171 F.3d 117, 121 (2d Cir. 1999)).  "A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim."  <u>Kronisch v. United States</u>, 150 F.3d 112, 121 (2d Cir. 1998) (citation omitted).  Instead, it is not until he discovers "the critical facts of both his injury and its cause" that the claim accrues.  <u>Barrett v. United States</u>, 689 F.2d 324, 327 (2d Cir. 1982).

In insisting that it is the knowledge gleaned from the OATH hearing that serves as the basis for his "awareness" of injury, plaintiff misunderstands the standard for accrual of claims.  "Discovery of the 'critical facts' . . . is not an exacting

requirement, but requires only 'knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." Kronisch, 150 F.3d at 121 (quoting Guccione v. United States, 670 F. Supp. 527, 536 (S.D.N.Y. 1987)). Thus, there is no requirement that a plaintiff must know "each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim" before the action accrues. Id. "Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." Id.

Plaintiff acknowledges that he came to believe that defendants banned him from the DoITT building in October 2012. (Compl. ¶¶ 86-87.) This belief certainly constitutes either knowledge of or knowledge that could lead to the basic facts regarding the injury's existence or cause.[13] Accordingly, plaintiff's property interest claim brought on January 14, 2016—past the statute of limitations, which expired in October 2015—is untimely.

C.   Liberty Interest Claim

Plaintiff's claim—that he was deprived of his liberty without due process of law under the Fourteenth Amendment—is commonly referred to as stigma-plus claim. Plaintiff alleges that: 1) his DoITT personnel file contained stigmatizing

---

[13]   In this case, the basic facts of plaintiff's injury are that defendants deprived plaintiff of his property interest in his employment without first providing him with notice and an opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story [prior to the adverse employment action].").

statements—namely, that he was on involuntary leave and mentally unfit for work, (Compl. ¶ 199); 2) that "a few potential employers" had called for a reference and DoITT told them that plaintiff was on involuntary leave "due to his perceived impairment and inability to work," (Compl. ¶ 195); and 3) that he received a job from DOE, which found that plaintiff was listed AWOL by DoITT, (Compl. ¶ 89).

To survive a challenge for failure to state a claim, a stigma-plus claim must adequately contain three required elements:  (1) "the government made stigmatizing statements about [him]—statements that call into question plaintiff's good name, reputation, honor, or integrity" or "that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his . . . profession," (2) "these stigmatizing statements were made public," and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from public employment."  Segal v. City of New York, 459 F.3d 207, 2012 (2d Cir. 2006). (internal quotation marks omitted) (citations omitted).

Defendants challenge the second prong, arguing both that plaintiff has pled insufficient facts to support his assertions in paragraphs 190 through 199 regarding past disclosure and has further failed to assert that the file is likely to be disclosed to future employers.  The Court agrees.  See Twombly, 550 U.S. at 570 (holding that a Complaint must allege "enough facts to state a claim to relief that is plausible on its face").

A plaintiff pursuing a stigma-plus claim must allege sufficient facts to demonstrate that it is plausible that "the presence of the charges in his personnel file [be] coupled with a likelihood of harmful disclosure." Brandt v. Board of Co-op. Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987); see also Segal, 459 F.3d at 213.

Plaintiff's allegation "upon information and belief" that at some point in the past DoITT employees told plaintiff's potential employers over the phone that he was on involuntary leave because of a "perceived impairment and inability to work" is not supported by any factual basis to support a plausible claim. (See Compl. ¶ 195.)[14]  Plaintiff needs to plead a sufficient factual basis to nudge his allegations "from conceivable to plausible." Twombly, 550 U.S. at 570.

In addition, plaintiff has failed to allege sufficient facts to support any future publication.  While plaintiff has asserted that statements regarding his involuntary leave and being mentally unfit were or are in his personnel file, he has failed to assert plausible facts regarding the likelihood of future disclosure of the file to the public.  Without such facts, plaintiff's claim lacks the necessary element of publication.

Based on these deficiencies, dismissal of this claim is required.  However, the Court cannot say at this stage that there is no set of facts that plaintiff could plead that would state a claim.  Accordingly, the Court allows plaintiff one opportunity to replead this claim within seven days.  In any amended pleadings, plaintiff shall also

---

[14]    The Court notes that the statement regarding "perceived impairment and inability to work" does not necessarily constitute a stigmatizing statement.  Quinn, 613 F.2d at 446.

address the question of proper remedy for such a claim and the relationship, if any, of the OATH hearing on such remedy.

### D.  Leave to Amend Complaint

Plaintiff requests the Court's leave to amend his Complaint to add claims under the Americans with Disabilities Act;  his request came after he received an Equal Employment Opportunity Commission "Notice of Right to Sue" letter on February 4, 2016.  Plaintiff also seeks leave to add additional retaliation allegations that occurred after and because of filing the instant action.  Plaintiff's request for leave to amend came within 90 days of the date he allegedly received the EEOC Right to Sue letter, and in such request, he sought to reserve his rights while the instant motion was pending.  He also attached the proposed Amended Complaint. (See Decl. of Samuel O. Maduegbuna, Ex. 2.)

Defendants fail to provide an adequate reason the Court should not grant leave to amend under Rule 15(a)(2) standard of "freely giv[ing] leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Defendants only claim that plaintiff's claim would now be untimely because it was not actually filed within 90 days of the right to sue letter, but ignoring completely plaintiff's request to file the claim was timely. Plaintiff's request to for leave to file the amendment was not improper.  While defendants are correct that plaintiff could have filed the amendment as a matter of right in the period between February 4, when he received the Right to Sue letter, and March 17, when defendants moved to dismiss, there is no requirement that the 90-day period for bringing a claim is truncated by Rule 15(a)(1).  Plaintiff moved for leave to amend under Rule 15(a)(2) and articulated the particular bases for his

amendment, explained why the amendment could not have been brought earlier, and attached a proposed amended complaint.  Because justice requires it, this Court GRANTS plaintiff's amendment request.  Any amendment must be filed within seven days of this order.

E.  State HRL and City HRL

Defendants move to dismiss plaintiff's State HRL and City HRL claims on the grounds that, assuming dismissal of all federal-law claims, the Court should decline to exercise supplemental jurisdiction over the state-law claims.  However, because the Court is allowing plaintiff to amend his Complaint, the request to decline supplemental jurisdiction is denied as moot.

IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to the federal claims.  Plaintiff's request for leave to amend his Complaint is GRANTED and any such amended pleadings shall be filed not later than **August 10, 2016** and shall be consistent with this Opinion and Order.  The Clerk of Court is directed to terminate the motion at ECF No. 20.

SO ORDERED.

Dated:      New York, New York
            August 3, 2016


_____
       KATHERINE B. FORREST
       United States District Judge

21